# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| CRAIG CUNNINGHAM, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>FLING.COM, LLC, a Florida company,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION** |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Craig Cunningham ("Cunningham" or "Plaintiff") brings this class action under the Telephone Consumer Protection Act against Defendant Fling.com, LLC ("Fling"), to stop its practice of sending unauthorized and unwanted text messages to prospective customers promoting its social website and to obtain redress for all persons similarly injured by its conduct. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## NATURE OF THE ACTION

1. This case challenges Defendant Fling's practice of sending unsolicited text messages to prospective customers of its website who have never agreed to be contacted.

2. Fling's unsolicited texts violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, and caused Plaintiff and putative members of the Class to suffer actual harm, including the aggravation, nuisance, loss of time, and invasions of privacy that result from the receipt of such text messages, lost value of cellular services paid for, and a loss of the use and enjoyment of their phones, including wear and tear to their phones' data, memory, software, hardware, and battery

components, among other harms.

3. Accordingly, Plaintiff seeks an injunction requiring Fling to cease sending unsolicited text messages to consumers, as well as an award of actual and/or statutory damages and costs.

## PARTIES

4. Plaintiff Craig Cunningham is a Texas resident.

5. Defendant Fling.com, LLC is a Florida company with a principal place of business in this District.

## JURISDICTION & VENUE

6. This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

7. The Court has personal jurisdiction over Defendant and venue is proper in this District because Fling is incorporated in Florida and headquartered in this district, and because Fling's unauthorized texting scheme was directed from this District.

## THE TELEPHONE CONSUMER PROTECTION ACT

8. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

<u>The TCPA Prohibits Automated Telemarketing Calls</u>

9. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone

number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

10. The TCPA also makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party". *See* 47 U.S.C. § 227(b)(1)(B).

11. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

12. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

13. In 2013, the FCC began requiring prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

Telemarketers Must Identify Themselves in Telemarketing Calls

14. The TCPA specifically required the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

15. The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific "do not call systems" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

16. Pursuant to this statutory mandate, the FCC established company-specific "do not call" rules that every company engaging in telemarketing is required to comply with. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

17. The FCC found that "the company-specific do-not-call list alternative is the most effective and efficient means to permit telephone subscribers to avoid unwanted telephone solicitations." *Id*. at 8765, ¶ 23. 19.

18. However, recognizing that an honor system would probably be insufficient, the FCC found that it "must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24. 20.

19. It accordingly placed the burden on telemarketers to implement and prove the implementation of their compliance procedures.

4

20. These regulations are codified at 47 CFR 64.1200(d)(1)-(6).

21. Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 CFR § 64.1200(d)(1, 2, 3, 6).

22. This includes the requirement that "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity can be contacted." 47 C.F.R. 64.1200(d)(4).

23. These policies and procedures prohibit a company from making telemarketing calls unless they have implemented these policies and procedures. 47 CFR 64.1200(d).

24. Accordingly, all telemarketing calls violate the TCPA, unless Defendant can demonstrate that it has implemented the required policies and procedures.

The Growing Problem of Automated Telemarketing

25. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

26. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-

5

consumer-protection-federal-communications-commission-rulesregulations/160616robocallscomment.pdf.

27. In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-nationaldo-not-call-registry-data-book-dnc.

28. *The New York Times* recently reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-riseillegal.html; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J. (July 4, 2018), https://www.wsj.com/articles/why-there-are-so-manyrobocalls-heres-what-you-can-do-about-them-1530610203.

29. Even more recently, a technology provider combating robocalls warned that nearly half of all calls to cell phones next year will be fraudulent. Press Release, First Orion, *Nearly 50% of U.S. Mobile Traffic Will Be Scam Calls by 2019* (Sept. 12, 2018), https://www.prnewswire.com/news-releases/nearly-50-of-us-mobile-traffic-will-be-scam-calls-by-2019-300711028.html.

## FACTUAL ALLEGATIONS

30. Fling offers a "Free Adult Dating" website. *See* www.fling.com (last visited July 20, 2019).

31. This case arises from Fling's use of unsolicited autodialed text messages to market itself to prospective customers of its website.

32. Fling does not attempt to obtain any form of consent before sending these texts. And that is precisely what happened to Plaintiff.

33. On July 1, 2019, Fling, or someone acting on its behalf, sent two unsolicited text messages to the Plaintiff's cellular phone number without Plaintiff's consent:



34. On information and belief, Fling, or a third-party acting on its behalf, sent substantively identical unsolicited text messages *en masse* to the cellular telephone numbers of thousands of consumers. To the extent the text messages were sent on Fling's behalf to consumers, Fling provided the third-party access to its records, otherwise controlled the content of the messages,

7

and knew of, but failed to stop, the sending of the text messages in violation of the TCPA.

35.     In sending the unsolicited text messages at issue, Fling, or a third party acting on its behalf, used an automatic telephone dialing system; hardware and/or software with the capacity to store or produce cellular telephone number to be called, using a random or sequential number generator.  This is evident from the circumstances surrounding the text messages, including the text message's commercial content, that substantively identical texts were sent to multiple recipients, and that they were sent from a long code,[1] which is consistent with the use of an automatic telephone dialing system to send text messages.

36.     In response to receiving Fling's text messages, Plaintiff requested a copy of Fling's internal do not call policy, and was told that one does not exist.

37.     Accordingly, Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself and all others similarly situated and seeks certification of the following Classes:

> **Automated Texting Class:** All persons who, on or after four years prior to the filing of the complaint, (1) were sent a text message to their cellular telephone number by or on behalf of Fling, (2) in substantially the same manner that Fling sent a text message to Plaintiff.
>
> **Internal DNC Class**: All persons in the United States who from four years prior to the filing of the complaint, (1) were sent a text message to their residential telephone number by or on behalf of Fling, (2) more than two times in a 12-month period (3) for substantially the same reason Fling sent a text message to Plaintiff.

38.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its

---

[1] In fact, the telephone number used to send the text message is registered to Bandwidth.com, a cloud-based telecom company that provides mass text messaging services.  *See* http://www.watchyourdirt.com/w-y/904-440/t-3 (last visited July 22, 2019).

parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the class definitions following appropriate discovery.

39. **Numerosity**: The exact size of the Classes is unknown and unavailable to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant sent unsolicited text messages to thousands of individuals who fall into the Class definition. Class membership can be easily determined from Defendant's records.

40. **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Classes. Plaintiff is a member of the Classes, and if Defendant violated the TCPA with respect to Plaintiff, then it violated the TCPA with respect to the other members of the Classes. Plaintiff and the Classes sustained the same damages as a result of Defendant's uniform wrongful conduct.

41. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

   a) How Defendant gathered, compiled, or obtained the telephone numbers of Plaintiff and the Classes;

   b) Whether the text messages were sent using an automatic telephone dialing system;

   c) Whether Defendant maintained a written "do not call" policy;

   d) Whether the Defendant identified itself in its text message marketing;

   e) Whether Defendant trained its employees or agents engaged in

9

     telemarketing on the existence and usage of any "do not call" policy;

 f) Whether Defendant sent some or all of the text messages without the consent of Plaintiff and the Classes; and

 g) Whether Defendant's conduct was willful and knowing such that Plaintiff and the Classes are entitled to treble damages.

42. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff.

43. **Policies Generally Applicable to the Classes**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes, and making final injunctive relief appropriate with respect to the Classes as a whole. Defendant's practices challenged herein apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiff.

44. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable. The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendant's misconduct. Even if members of the Classes could sustain such individual

litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this case. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions ensured.

**FIRST CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the Internal DNC Class)**

45. Plaintiff repeats and realleges the allegations of paragraphs 1 through 43 of this complaint and incorporates them by reference.

46. Defendant placed two or more telemarketing calls to Plaintiff's and Internal DNC Class Members' telephone numbers.

47. Defendant did so despite not having a written policy pertaining to "do not call" requests.

48. Defendant did so despite not identifying itself in its text message marketing.

49. Accordingly, Plaintiff and Internal DNC Class Members are entitled to an award of up to $1,500 per TCPA violation, pursuant to 47 U.S.C. § 227(c)(5).

**SECOND CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227(b)**
**(On Behalf of Plaintiff and the Automated Texting Class)**

50. Plaintiff repeats and realleges the allegations of paragraphs 1 through 43 of this complaint and incorporates them by reference.

51. Defendant and/or its agents agent transmitted text messages to cellular telephone numbers belonging to Plaintiff and the other members of the Automated Texting Class using an automatic telephone dialing system.

52. These text messages were sent without the consent of Plaintiff and the other members of the Automated Texting Class.

53. Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii), entitling Plaintiff and Automated Texting Class Members to an award of up to $1,500 in damages per TCPA violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Cunningham, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above, and appointing Plaintiff as the representative of the Classes and his counsel as Class Counsel;

b) An award of actual and/or statutory damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited text messaging activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial.

Dated: July 24, 2019.

*/s/ Avi R. Kaufman*
Avi R. Kaufman (FL Bar no. 84382)
kaufman@kaufmanpa.com
Rachel E. Kaufman (FL Bar no. 87406)
rachel@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

*Counsel for Plaintiff Craig Cunningham
and all others similarly situated*